UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 08 CR 764 |
| | ) | |
| RAMON CROFT | ) | Judge Charles Norgle |
| | ) | |

**GOVERNMENT'S MOTIONS *IN LIMINE***

The United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney

for the Northern District of Illinois, respectfully submits its motions *in limine* seeking pretrial rulings

on the admissibility of certain evidence and the propriety of certain arguments, as follows:

**I.      Background**

This case concerns an assault on United States Postal Inspector ("PI") Jonathan Grafmiller.

The government will establish that, on September 11, 2008, Defendant assaulted PI Grafmiller

during an attempted arrest of Defendant for identity theft. Specifically, Defendant had ordered over

$2,000 in merchandise from Nordstrom Department Store using another individual's credit card

information (hereinafter "Individual A") who resided in California. Nordstrom confirmed with

Individual A that she had not made the credit card purchases. Postal Inspectors were notified and

executed a controlled delivery of the merchandise on September 11, 2008. The government will

show that Defendant accepted delivery of the Nordstrom merchandise and signed Individual A's

name. PI Grafmiller announced that he was a police officer, and attempted to place Defendant under

arrest. At that point, Defendant hit PI Grafmiller several times, which resulted in a cut at his waist.

Defendant then fled the scene. The government will establish that Defendant admitted to

committing the identity theft crime in a conversation with law enforcement after the assault. Law

1

enforcement agents urged defendant to turn himself in. Instead, the government will show that Defendant packed up his personal belongings from his apartment and fled to Pennsylvania within four days after the assault. Defendant was arrested near Allentown, Pennsylvania by United States Marshals and removed to the Northern District of Illinois for this case.

## II. The Court Should Admit Evidence Concerning the Circumstances of Defendant's Arrest

The government moves *in limine* to admit evidence about the circumstances leading up to the assault on September 11, 2008. Specifically, the government seeks to admit evidence that Defendant impermissibly used Individual A's credit card information to make $2,000 in purchases, that Postal Inspectors executed a controlled delivery of the merchandise, and that Defendant signed Individual A's name before he was arrested. The evidence is directly relevant to establishing one of the elements of the crime, namely, that PI Grafmiller was engaged in his official duties when he was assaulted. Moreover, the evidence is necessary for the jury to understand the chronology of the events, and the reasons why PI Grafmiller was present outside Defendant's apartment and interacted with Defendant on September 11, 2008. Finally, the evidence of the arrest establishes Defendant's motive for the assault.

First, the government seeks to admit the evidence to establish an element of the crime. "An act is 'inextricably intertwined' with the charged crime if it completes the story of the crime, creates a chronological or conceptual void in the story if omitted, helps to explain the circumstances surrounding the charged crime or tends to prove an essential element of the charged crime." *United States v. Strong*, 485 F.3d 985, 990 (7th Cir. 2007). To prove a felony violation of 18 U.S.C. §111(a)(1), the government must show that: (1) Defendant forcibly assaulted PI Grafmiller, (2) PI Grafmiller was an officer or employee of the United States and was performing an official duty at

the time of the assault, (3) Defendant made physical contact with PI Grafmiller; (3) Defendant acted knowingly. *See* 18 U.S.C. § 111(a)(1); *United States v. Vallery*, 437 F.3d 626, 630-33 (7th Cir. 2006); *United States v. Gray*, 332 F.3d 491, 492-93 (7th Cir. 2003).[1]  Accordingly, the second element of the crime contemplates that the government will offer evidence that a federal officer was performing an official duty at the time of the assault.  Here, PI Grafmiller was engaging *in his official duties* when he executed a controlled delivery of fraudulently obtained merchandise and attempted to arrest Defendant.  Thus, the evidence is probative of an essential element of the crime. *See United States v. Strong*, 485 F.3d at 990 (evidence about uncharged drug trafficking admitted to show that defendant knowingly possessed a firearm).

Second, the evidence about the controlled delivery and arrest is necessary to complete the chronology of events, allow the jury to understand why PI Grafmiller was at Defendant's apartment, and explain the reasons for the attempted arrest just before the assault.  In *United States v. Bogan*, 267 F.3d 614, 621 (7th Cir. 2001),  the court upheld the admission of evidence that the defendants engaged in prison wine-making activity before they assaulted federal prison guards in violation of 18 U.S.C. § 111(a).  The court explained that the jury was properly informed of the chronology of events and the significance of the paraphernalia confiscated, which allowed the jury to understand the subsequent assault after the confiscation.  In so doing, the court stated that the evidence "completed the story of the crime charged and was 'necessary for the jury to fully understand and make sense of' their vicious attack upon [the prison guard].'  *Id* at 622.  Here, evidence of the controlled delivery and arrest will establish the chronology of events, namely, that: (1) Defendant had ordered merchandise by fraudulently using Individual A's credit card; (2) PI Grafmiller

---

[1]If a defendant inflicts bodily injury, as he did here, he is subject to the enhanced penalty provision of 18 U.S.C. § 111(b).

delivered the merchandise in a controlled delivery;(3) Defendant signed for the merchandise using Individual A's name; and (3) PI Grafmiller attempted to arrest Defendant. Without this evidence, the jury would hear about an assault in a vacuum without any context or explanation about why PI Grafmiller was present at Defendant's apartment and why he attempted to arrest him. *See United States v. Samuels*, 521 F.3d 804, 813 (7th Cir. 2008) (evidence concerning a beating was inextricably intertwined with evidence about possession of a gun and were "tightly woven into the chronology and circumstances of acts probative of the felon in possession elements[.]")

Third, the evidence is admissible to establish Defendant's motive for the assault. In *Bogan*, the court also upheld the admission of evidence concerning the prison guards confiscation of prison wine-making paraphernalia because it established the defendant's motive for committing the assault. *United States v. Bogan,* 267 F.3d at 622. Similarly, Defendant was caught red-handed signing Individual A's name in return for the Nordstrom merchandise. The evidence shows Defendant had a motive to assault PI Grafmiller because he realized he was caught and under arrest for identity theft.[2]

Finally, the admission of the evidence does not cause any unfair prejudice under Federal Rule of Evidence 403. Because all probative evidence is prejudicial to the party against whom it is introduced, such evidence should only be excluded if the prejudice is *unfair. United States v. Adames,* 56 F.3d 737, 742 (7th Cir. 1995). Evidence fails the Rule 403 test "only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Wantuch,* 525 F.3d 505, 518 (7th Cir. 2008). Put another way,

---

[2]To the extent this evidence implicates the prohibition against character evidence, Federal Rule of Evidence 404(b) recognizes that such evidence is admissible for other purposes, such as motive and opportunity.

the probative value "must be insignificant compared to its inflammatory nature so that the evidence *unfairly* prejudices the defendant." *United States v. Gougis*, 432 F.3d 735, 743 (7th Cir. 2005)(emphasis in original) (*quoting United States v. Rutledge*, 40 F.3d 879, 885 (7th Cir. 1994)). Here, the evidence is highly probative – it tends to prove an element of the crime, it completes the chronology of events, and it establishes Defendant's motive. Furthermore, the evidence is not unfairly prejudicial because it is not so inflammatory that the jury will decide the case on the basis of emotion. Rather, the evidence only shows that Defendant made unauthorized purchases using someone else's credit card. Indeed, the Seventh Circuit has upheld the admission of inextricably intertwined evidence that is far more prejudicial than the facts presented in this case, such as evidence of drug trafficking, beatings, and illegal sales of goods. *See Strong*, 485 F.3d at 990 (evidence of drug trafficking to show knowing possession of weapon); *Samuel*s, 521 F.3d at 813 (evidence of beating to show possession of weapon); *United States v. Wantuch*, 525 F.3d 505 (7th Cir. 2008) (evidence of illegal sales of cigarettes helped establish a conspiracy concerning false immigration documents).

Accordingly, for the above reasons, the government seeks an order *in limine* permitting the introduction of evidence concerning the identity fraud investigation, the controlled delivery on September 11, 2008, and the attempted arrest of Defendant before the assault.

## II.    Evidence of Defendant's Flight After the Assault is Admissible to Show Consciousness of Guilt

The government moves *in limine* to admit evidence about Defendant's escape to Pennsylvania after the assault. Specifically, the government will show that, after the assault, Defendant fled the scene, packed up his apartment, obtained access to a U-Haul truck, and drove to Pennsylvania where he was eventually arrested. "Evidence of flight and concealment may be

5

admissible to show consciousness of guilt, as well as guilt itself." *United States v. Skoczen*, 405 F.3d 537, 548 (7th Cir. 2005) (admitting evidence of flight); *United States v. Robinson*, 161 F.3d 463, 467 (7th Cir. 1998) (same); *United States v. Hunter*, 145 F.3d 946, 950 (7th Cir. 1998) (same). The Seventh Circuit Court of Appeals has held that the probative value of flight evidence depends on the degree of confidence with which four inferences can be drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.[3] *Skoczen*, 405 F.3d at 548 (citing *United States v. Levine*, 5 F.3d 1100, 1107 (7th Cir. 1993)).

In *United States v. Robinson*, the Court upheld the admission of evidence that defendant attempted to elude police officers and escape arrest after a bank robbery. The Court noted that the flight occurred close in time to the crime charged and that there was substantial evidence linking defendant to the bank robbery. As a result, the Court determined that there was a "reasonable inference that he fled because of consciousness of guilt." 161 F.3d at 469; *see United States v. Lewis*, 797 F.2d 358, 368 (7th Cir. 1986) (admitting evidence of flight); *United States v. Levine*, 5 F.3d 1100, 1107 (7th Cir. 1993) (evidence of flight admissible when defendant escaped because he realized he was under indictment).

Here, the government will introduce ample evidence that Defendant fled Chicago because of his guilt. The government will show that defendant assaulted PI Grafmiller and escaped through the back door of his apartment. Law enforcement agents urged Defendant to turn himself in during

---

[3]While the Seventh Circuit has enunciated these factors, the Court's analysis has not strictly evaluated each of these prongs, but rather discussed generally the probative value of the flight evidence and the strength of the evidence concerning defendant's guilt.

a phone conversation that occurred within an hour after the assault. However, Defendant instead took significant measures to leave Chicago, including packing up his personal belongings in his apartment, obtaining access to a U-Haul truck under an alias, and fleeing the city within four days after the assault. Moreover, the government will introduce substantial evidence linking defendant to the assault including testimony from Postal Inspectors, hospital records of the injury, and an article of clothing with blood stains from the assault.[4] Accordingly, evidence of flight is highly probative of Defendant's guilt.

Moreover, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under Federal Rule of Evidence 403. The evidence is not inflammatory, nor does it promote a verdict based on emotion rather than the evidence. *See Robinson*, 161 F.3d at 470 (holding that Rule 403 did not bar evidence of flight); *Hunter*, 145 F.3d at 946 (same). Instead, the jury will only hear testimony about Defendant's activities after the assault. The probative value of this evidence, as discussed above, is not *substantially outweighed* by the danger of unfair prejudice.

## III.     The Court Should Admit Evidence of Defendant's Prior Convictions If He Testifies At Trial

The government seeks an order admitting the use of Defendant's prior convictions for impeachment pursuant to Federal Rule of Evidence 609 if he chooses to testify at trial. Specifically, Defendant has two convictions that involved acts of dishonesty under Rule 609(a)(2) and that occurred within the ten-year time period as provided in Rule 609(b). First, Defendant was convicted for forgery in New York County, Superior Court, in New York, New York on January 9, 2001 and

---

[4]Any argument by Defendant that his flight stemmed from the identity theft scheme (and not the assault) should be rejected. As the court recognized in *Robinson*, "it is not the role of the District Court to parse the mind of a defendant to determine which act may have created a higher consciousness of guilt[.]" 161 F.3d at 470.

sentenced to five years' probation. Second, Defendant was convicted for falsifying a financial statement in Municipal Court, Clifton, New Jersey on September 13, 2002 and received six months' imprisonment. Both crimes inherently involve acts of dishonesty and are presumptively admissible under Rule 609(a)(2), which means they can be admitted regardless of their prejudicial effect. *United States v. Byrd*, 771 F.2d 215, 219 (7th Cir. 1995) (forgery conviction "clearly admissible under Rule 609(a)(2)"); *United States v. Kuecker*, 740 F.2d 496, 502 (7th Cir. 1984) (no balancing test for prejudicial effect under Rule 609(a)(2)).

Furthermore, defendant was convicted for obstruction of justice on March 14, 2007 in Clifton, New Jersey where he received a sentence of twenty-four days' imprisonment.[5] This conviction is admissible under Federal Rule of Evidence 609(a)(1) because its probative value outweighs its prejudicial effect. In determining whether the probative value outweighs the prejudicial effect, the court considers: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the charged crime and the past crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005)

Specifically, Defendant's past conviction for obstruction of justice is probative because it is similar to the instant crime – Defendant essentially obstructed the administration of justice by resisting arrest and assaulting a federal officer. Given the strong similarity because the conviction and the charged crime, evidence of this prior conviction is probative of defendant's credibility. Furthermore, the conviction is recent (2007) and therefore is close in time to the instant offense. Defendant's testimony (and his credibility) will also be a critical piece of evidence for the jury to

---

[5]This crime was a violation of N.J.S.A 2C:29-1, which is an offense punishable by up to 18 months' imprisonment under New Jersey state law.

consider, as his likely denial of the incident will be in stark contrast to the testimony of Postal Inspector Jonathan Grafmiller who will describe the assault. Accordingly, the government should be permitted to impeach defendant's credibility with his prior conviction under Rule 609(a)(1).

Finally, defendant has two additional convictions that involve an act of dishonesty that are more than ten years old. On January 22, 1998, defendant was convicted for felony credit card fraud in the Norfolk Circuit Court, Norfolk, Virginia. On April 18, 1997, defendant was convicted in Jacksonville Circuit Court, Jacksonville, Florida for Altering a Public Records Certificate and sentenced to one month imprisonment. Both convictions inherently concern acts of dishonesty under Rule 609(a)(2). While these convictions are more than ten years old, the probative value of these convictions substantially outweigh their prejudicial effect. Because these convictions relate to acts of dishonesty, they directly implicate defendant's credibility. They also demonstrate a pattern of dishonesty when view in conjunction with defendant's other convictions forgery and falsifying financial statements. Accordingly, the government seeks to impeach defendant with these additional convictions if he testifies.

## IV. The Court Should Exclude Evidence Concerning Penalties Faced by Defendant

The government moves this Court to preclude defendant from introducing evidence, making argument, or otherwise mentioning the potential penalties faced by the defendant if convicted. The Seventh Circuit unequivocally has held that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that "the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court"). Such argument or evidence concerning punishment is

improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"), *quoting United States v. Rogers*, 422 U.S. 35, 40 (1975); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."); *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special statutory provision mandates a jury role in assessment or determination of penalty, the punishment provided by law for offenses charged is a matter exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence."). Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification. *See, e.g., United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("'The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.'"), *quoting United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980); *United States v. Patterson*, 1996 WL 54237, at *1 (N.D.Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification). Accordingly, the evidence has no probative value and should be excluded under this Circuit's precedent.

## V.     The Court Should Exclude Forms of Argument or Evidence Designed to Elicit Jury Nullification

The government moves this Court to preclude the defendant from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit, jury nullification. The law is clear that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. *See, e.g., United States*

*v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."), *citing United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988) and *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'"), *quoting United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983).

Although the government is unable to anticipate each form of "jury nullification" argument or evidence that defendant may seek to interject into this trial, the government does note the following examples:

## A.     Argument or Evidence of "Outrageous Government Conduct"

There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F.Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, at *3 (N.D. Ill. Aug. 13, 1991); *United States v. Finley*, 708 F. Supp. 906, 913-914 (N.D. Ill. 1989) (granting motion *in*

11

*limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation."); *United States v. Katz*, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992).

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995). *Boyd* is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort. Second, even before the *Boyd* decision, this Circuit held that the issue of government misconduct was a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted); *see also Katz*, 1992 WL 137174, at *5 ("[T]he government is right in attempting to preclude any argument by [defendant] before the jury that the government's conduct in investigating and prosecuting this case is outrageous."); *United States v. D'Arco*, 1991 WL 264504 (N.D.Ill. Oct. 18, 1991); *Shields*, 1991 WL 236492, at *3; *Finley*, 708 F. Supp. at 913-914.

**B.** **Argument or Questioning about Motivation for Investigating or Prosecuting this Case**

Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus excluded from trial. *See United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political

12

instrument"); *United States v. Berrigan*, 482 F.2d 171, 174-76 (3d Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution"). It is settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. *See, e.g., United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); *Katz,* 1992 WL 137174, at *7 (granting government's motion *in limine* to preclude inquiry regarding "[t]he subjective intentions or motivations of the agents involved in this case."); *Shields*, 1991 WL 236492 at *3 (precluding evidence concerning discussions between supervising agent and cooperating witness and noting, "evidence of conversations between the government and its cooperating witness are immaterial; rather what matters is what the witness said to the defendants.").

C.      **Family Needs**

While the government acknowledges that the defendant is permitted to introduce, through proper methods, limited testimony concerning his background, the government moves this Court to preclude evidence and argument regarding defendant's family needs, including any arguments or evidence designed to excuse defendant's criminal conduct or to invoke sympathies regarding the impact of a conviction upon his family or business. Such evidence is irrelevant to defendant's factual guilt and is designed for no other purpose than to invoke improper appeals for jury nullification. Accordingly, such evidence or argument is properly excluded. *See, e.g., D'Arco*, 1991 WL 26504, at *4 (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); *Shields*, 1991 WL 236492, at *4 (granting

13

motion *in limine* precluding "any testimony regarding the possible impact which a conviction might have upon any family member").

## VI.    The Court Should Exclude Commentary Regarding Discovery in Presence of Jury

The government moves to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests from counsel in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See United States v. Dochee*, 2009 WL 102986, at *1 (Jan. 15, 2009) (barring any commentary on the discovery process in the presence of the jury). In fact, as often happens, counsel's requests are ill-founded because the discovery has already been tendered or is not subject to disclosure. Moreover, in this case, the government has endeavored to turn over all evidence when it has become available. In any event, these requests, if appropriate, can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the government moves that requests for discovery or comments relating to discovery be made outside the presence of the jury. This system has been used in other cases – *e.g., United States v. Phillip Ishola, et al.*, 95 CR 523 (Leinenweber, J.), *United States v. Tejeda, et al.*, 05 CR 194 (Gettleman, J.), *United States v. Hosseini*, 05 CR 254 (Shadur, J.) – and has worked well. The government believes it is a fair and sensible one to employ here. *See generally Thompson v. Glenmede Trust Co.*, 1996 WL 529693, at *2 (E.D.Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

14

## VII. Conclusion

For the aforementioned reasons, the Government respectfully requests that its motions *in limine* be granted.

> Respectfully submitted,
> PATRICK J. FITZGERALD
> United States Attorney
>
>
> By:  /s Sunil R. Harjani
> Daniel Collins
> Sunil R. Harjani
> Assistant United States Attorneys
> 219 South Dearborn Street
> Chicago, Illinois 60604
> (312) 353-5300

**Certificate of Service**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electric Case Filing (ECF), that the Government's Motions *In Limine* were served on counsel for Defendant, pursuant to the district court's ECF system, on March 25, 2009.

By: /s Sunil R. Harjani
      Sunil R. Harjani
      Assistant United States Attorney
      219 S. Dearborn Street
      5th Floor
      Chicago, Illinois 60604
      (312) 353-5277