UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 764-1 |
| vs. | ) | Judge Norgle |
| | ) | |
| RAMON CROFT | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

Defendant was charged in a one count indictment in this case on October 16, 2008 with the offense of assault of a federal officer in violation of Title 18, United States Code, Section 111(a)(1) and (b).

On March 31, 2009, defendant was convicted for the offense after a bench trial before this Court. The penalty for the offense of conviction is: a statutory maximum penalty of twenty years imprisonment, a statutory maximum fine of $250,000, a term of supervised release of not more than three years, which the Court may specify, and any restitution the Court may order. Under the factors set forth in 18 U.S.C. § 3553(a), the government requests that this Court impose a guidelines sentence of 27 to 33 months.

**I.   Background**

At trial, the government established the following facts:

On September 9, 2008, Nordstrom Department Store's Loss Prevention Manager Duron contacted the United States Postal Inspection ("Postal Inspection"). Duron requested a controlled delivery of merchandise to 7018 N. Sheridan Ave, Chicago, IL. According to Duron, a purchase order for merchandise was placed with Nordstrom on September 8, 2008, using the name Corrine Martin, with an address in California. The purchase order instructed that the merchandise be

charged to her credit card number. The total charge for the merchandise was over $2,000. However, the purchase order stated that the merchandise should be delivered to Ramon Croft at 7018 N. Sheridan Avenue, Chicago IL. Nordstrom contacted Martin who denied placing any purchases with Nordstrom. Nordstrom contacted U.S. Postal Inspection to set up a controlled delivery.

On Thursday, September 11th, officers from Postal Inspection and the Chicago Police Department, arrived at 7018 N. Sheridan Road, Chicago, IL. PI Grafmiller acted in an undercover capacity and dressed as a United States Postal Service mail carrier. The remainder of the team maintained an open cell phone line in order to hear Grafmiller. An African-American male opened the door at 7018 N. Sheridan Road. From a picture obtained from Nordstrom Manager Duron, PI Grafmiller recognized this individual to be Croft. PI Grafmiller positively identified Defendant Ramon Croft in Court as the person who he encountered that day. PI Grafmiller stepped into the vestibule of the building and requested a signature from Martin for delivery of the merchandise. Croft responded that Martin was upstairs in a wheelchair and that he was his brother. Croft accepted delivery of the merchandise and signed Martin's name. At that point, PI Grafmiller announced that he was a police officer and that Croft was under arrest.

Croft struck PI Grafmiller with his hand several times in the face, back and side. Croft's hit to PI Grafmiller's side resulted in a cut. Croft then fled the scene. Law enforcement gave chase but Croft escaped. Another occupant of the apartment, Quentin Bullock, told law enforcement that the man who answered the door and hit PI Grafmiller was known as Ramon Croft. Bullock stated that he and Croft were roommates. Bullock also stated that Croft was HIV positive.

PI Grafmiller was taken to Evanston Hospital and treated as an outpatient. He was also tested for the HIV virus as a result of the cut he received. The initial test result was negative. He

followed up several days later with his physician.

Within approximately thirty minutes of the incident, a man identifying himself as Croft telephoned the apartment. Law enforcement talked to Croft over the phone. Law enforcement urged Croft to turn himself in, but he did not.

Four days later, Postal Inspection agents discovered that Croft and Bullock's apartment was vacated and that Croft had rented a U-Haul truck under a false identity. The U-Haul truck was returned in Pennsylvania where Croft was arrested pursuant to the arrest warrant issued in this district. When arrested, Croft told the Deputy U.S. Marshall, "I didn't mean to hit him. I didn't know who he was."

At trial, the Court received into evidence a photograph of the cut Grafmiller received, a blood-stained T-Shirt from the assault, and hospital records of treatment received by Grafmiller. The Court found this physical evidence to be probative evidence of the assault. The Court also found the government's witnesses credible, including PI Jonathan Grafmiller, case agent Leesa Bahling, and Deputy U.S. Marshals Steven Linder and Enrique Trevino.

Defendant testified at trial. Defendant claimed that a mailman "lunged" at him, and his response was to run up the stairs, through his apartment, and out the back door. Defendant claimed to have moved to Pennsylvania after the assault because he was being evicted from his apartment in Chicago. At the same time, defendant admitted to committing the identity theft that started the sequence of events, and a host of other crimes, including using bad checks to obtain cash. The Court found that defendant's denial of the assault to be not credible.

The Court issued its ruling after trial and convicted defendant for the offense. A copy of the trial transcript will be submitted to the Court when it is completed.

## II.  Guidelines Calculation

The Probation Department's Guidelines calculation is as follows:

| | |
|---|---|
| 10 | base offense level, per U.S.S.G. § 2A2.4 |
| +3 | offense involved physical contact, per U.S.S.G. § 2A2.4(b)(1)(A) |
| +2 | offense involved bodily injury, per U.S.S.G. § 2A2.4(b)(2) |
| **15** | **adjusted base offense level** |

PSR 4.  The PSR does not take a position on whether defendant qualifies for an obstruction of justice enhancement.  The government submits that defendant qualifies for a 2-level increase because he testified falsely at trial.  Defendant expressly denied hitting and injuring PI Grafmiller.  The Court found defendant not credible and convicted him for the assault.  Accordingly, pursuant to Guideline §3C1.1, defendant qualifies for a 2-level enhancement for testifying falsely at trial.  The government's position is that defendant's offense level is 17.

The Probation Department calculates two criminal history points for defendant, resulting in a criminal history category II. PSR 7.  The government agrees with the Probation Department's calculation of defendant's criminal history score.

An adjusted offense level of 17, when combined with the anticipated criminal history category of II, results in an anticipated advisory Sentencing Guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

### III.  A Sentence Within the Guidelines Range is Reasonable, But Not Greater Than Necessary Under 18 U.S.C. § 3553(a)

The government is seeking a sentence at within the Guideline range. The PSR sets forth many § 3553(a) factors which will not be repeated here.

#### 1.  Nature and Circumstances of the Offenses

The offense of assault on a federal officer is a serious offense. Federal agents risk their lives in conducting their investigations and arrests. Individuals who respond with force to an arrest must be held accountable. Here, PI Grafmiller was assaulted in the course of conducting a controlled delivery and attempting an arrest. The assault resulted in a cut to PI Grafmiller's side that required some treatment. Even though the injury was not serious, the assault had the potential for greater danger because defendant was HIV positive. As noted in the PSR, defendant could not interact with his family at a time when they needed him while he awaited the results of an HIV test. Moreover, as shown during the bench trial, defendant also fled Chicago after the incident. He was urged to turn himself in, but instead he escaped to Pennsylvania where he was arrested.

#### 2.  History and Characteristics of Defendant

Defendant is a convicted felon who engages in identity scams in order to make a living. As the Court will recall from the bench trial, defendant admitted to using a stolen credit card number to make over $2,000 in purchases from Nordstrom that led to the instant offense. Defendant testified that he has used stolen credit card information to make purchases on numerous occasions. Furthermore, defendant admitted to engaging in a bad

check scheme where he obtained fake checks, used them to make purchases at stores, and then returned the goods for cash. As discussed in the PSR, defendant has several forgery and false document convictions. The PSR does not recount any mitigating factors that warrant lower sentence.

3.      **The Need For the Sentence Imposed**

The Court is directed under § 3553(a) to consider whether its sentence would serve certain needs enumerated in the statute. The government's position is that a Guidelines sentence would meet those needs in this case. To provide just punishment for the offense, and to afford both specific deterrence to defendant and general deterrence to others, this Court should impose a sentence within the applicable Guidelines range. Defendant, and others who are contemplating such a crime, are more likely to be deterred from such conduct if they learn they will pay a stiff price for it. A sentence between 27 to 33 months' imprisonment would reflect the seriousness of the crime at issue, promote just punishment for the offense and a respect for the nation's laws.

4.      **The Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct**

The governments submits that the Sentencing Guidelines are the *sole* factor in § 3553 that provides any objective sentencing range that can practically promote the overall goal of minimizing unwarranted sentencing disparities. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."). The Supreme Court created the advisory

system to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individual sentences when necessary." *Booker v. United States*, 543 U.S. 220, 264-65 (2005). The only way to prevent widespread disparities is to give serious consideration to the Guidelines.

The Guidelines also deserve consideration and serve to minimize unwarranted disparities because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. –, 128 S.Ct. 586, 594 (2007). It is true that there is no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007), and that there is "broad" sentencing discretion post-Booker, *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology; its judgments should not be lightly regarded." *United States v. Wachowiak*, 496 F.3d 744, 753 (7th Cir. 2007) (internal quotations and citation omitted). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 94(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range. In short, the Sentencing Guidelines must be the starting point and initial benchmark for this Court in determining the appropriate sentence in this matter, *see Gall*, 128 S.Ct. at 596, and a Guidelines range sentence will serve to minimize sentencing disparities nationwide.

**III.     Conclusion**

For the reasons set forth in this memorandum, the PSR, the Government's Version of Events and at sentencing, a sentence within the advisory guideline range, or 27 to 33 months is reasonable, but not greater than necessary, to comply with the factors set forth in 18 U.S.C. § 3553(a).

                Respectfully submitted,

                PATRICK J. FITZGERALD
                United States Attorney

                By:   /s/ Sunil R. Harjani

                  Sunil R. Harjani
                  Assistant United States Attorney
                  219 South Dearborn Street
                  Chicago, Illinois 60604
                  (312) 353-9353

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 764-1 |
| vs. | ) | Judge Norgle |
| | ) | |
| RAMON CROFT | ) | |

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following document:

**GOVERNMENT'S SENTENCING MEMORANDUM**

was served on June 18, 2009 , in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF), via the district court's electronic filing system as to ECF filers.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: /s/ Sunil R. Harjani

SUNIL R. HARJANI
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-9353